UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

****************************************
Stephanie Flanders                  *
    Plaintiff,                   *
                                 *
v.                                  *       AMENDED COMPLAINT
                                 *       Case No. 1:20-cv-00340-JL
Chartwell Management, LLC           *       Jury Trial Requested
    Defendant.                   *
                                 *
****************************************

**I.     Parties:**

1.     The plaintiff, Stephanie Flanders, is a resident of the State of New Hampshire with a mailing address of 356 Wilson's Crossing Road, Auburn, New Hampshire 03032.

2.     The defendant, Chartwell Management, LLC, is a South Carolina foreign limited liability company with a principal office address of 21 Highland Circle, 3rd Floor, Needham, Massachusetts 02494.

**II.    Jurisdiction & Venue:**

3.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.     Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred within this judicial district.

1

### III.     Facts:

6.     In August 2017, Stephanie Flanders became employed by Chartwell Management as Compliance Manager and Assistant Community Director in a multi-family project in Seabrook, New Hampshire.  Her hourly rate of pay was $17.00 for a 40-hour work week.  When she left she was earning $23.00 an hour.

7.     Ms. Flanders enjoyed her job dealing with new tenants, processing files and developing relationships with the tenants and staff at the Chartwell properties.

8.     Tobin Watterson, a property manager, later joined Chartwell in 2018.  Ms. Flanders was 31 years old and Mr. Watterson was probably twice her age.  By March 2018, Mr. Watterson was saying things like, "that sweater looks very nice on you" and looking at Ms. Flanders' breasts when he said it.  The sweater incident happened in the maintenance office.   Mr. Watterson and Ms. Flanders were alone so it was very upsetting to her.  Ms. Flanders orally reported how she felt to two co-workers right after this happened.   Mr. Watterson's "good old boy" attitude toward women was noticeable.

9.     When Ms. Flanders had lost a family member, Mr. Watterson hugged her but it was not something she wanted or asked for because he had just started the job and she felt very uncomfortable around him.  It is not proper to hug a fellow employee just because you feel it would be welcomed.

10.     Mr. Watterson would often place his hand on Ms. Flanders' shoulder when passing by her at the copy machine.  His comments and constant staring at Ms. Flanders' breasts were unwelcome and unwanted.

2

11. Ms. Flanders became very concerned that Mr. Watterson had sexual desires for her and this was distressing because of prior experiences in her teenage years with sexual assault that triggered her PTSD in 2018 because of Mr. Watterson's domineering and sexist behavior.

12. Mr. Watterson would make comments about women like, "Oh the bookkeeper (who is a woman) must be off her meds today." He would say that women are "catty" and men can get along but women cannot.

13. Mr. Watterson would also say that all women do is bitch and feed bullshit to him.

14. One day in the summer of 2018, Mr. Watterson said, "If these ladies would pull their heads out of their asses things would be better." These are things Ms. Flanders would hear all the time because her desk was right near Mr. Watterson's desk and they were alone in a small office. The above comments from April through August, 2018, were on a very frequent, almost daily, basis.

15. Ms. Flanders became more concerned when Mr. Watterson started leaving muffins on her desk, asking if she wanted chocolate and asking about her family life.

16. Ms. Flanders finally got up the courage to go to Human Resources on or about August 16, 2018. Mr. Watterson's boss, Tracey Achille, Regional Community Director, came up for a routine visit and Ms. Flanders was able to tell Ms. Achille about her concerns and mental upset at Mr. Watterson's unwanted and unwelcomed comments and physical contact.

17. In a face-to-face conversation with Ms. Achille, Ms. Flanders informed her that Mr. Watterson made her feel very uncomfortable. Ms. Flanders let her know that Mr. Watterson made a comment about her necklace and sweater which made her uncomfortable because it followed staring at her breasts. Ms. Flanders also told her that she thought it was inappropriate for Mr. Watterson to hug her when she did not even know him as he had just started with Chartwell.

18. Ms. Flanders also spoke to Patrick Okas, Director of Human Resources, about the situation, but after that meeting nothing really changed and even though Ms. Flanders had explained how hostile the environment was. All Human Resources told Ms. Flanders to do was not to tell anyone else.

19. Ms. Flanders sent an email to Mr. Okas regarding feeling uncomfortable because all the information she had provided to management <u>in confidence</u> was being repeated back to her in questions from Mr. Watterson.

20. Ms. Flanders never received a response from anyone regarding her concerns and she continued to have to share an office with Mr. Watterson with constant anxiety from him questioning her and hovering over her at her desk and staring at her breasts. Ms. Flanders felt what she said to Mr. Okas was relayed to Mr. Watterson so she was obviously reluctant to complain further.

21. Ms. Flanders felt she was not being heard and nothing was being done to get her out of the situation which was causing her constant stress, anxiety and depression. Ms. Flanders had been a sexual assault victim on two different occasions so she was very attuned to men who may made advances to her.

22. On September 6, 2018, Ms. Flanders was in her office with co-worker Cathy Boudreau and learned by surprise that she no longer had computer access to do things she was doing just the day before. As Ms. Flanders was the Assistant Property Manager, she should have had access to those areas that pertain to her day-to-day work.

23. Ms. Flanders then went down to Mr. Watterson's office (this was when Ms. Flanders finally moved her desk because she found out that Chartwell was keeping Mr. Watterson).

24. Ms. Flanders asked Mr. Watterson how come she did not have access to a company program called Yardi that she was able to use yesterday. Mr. Watterson said this must be a glitch but Ms. Flanders told him that in order for her to lose access it cannot be a "glitch," you have to physically go into the system to block someone from having access.

25. Mr. Watterson said he would talk to Ms. Achille and that IT would fix the problem. Ms. Flanders said she did not believe it and that she felt extremely uncomfortable and blindsided and that this was the final straw for her after being put through an emotional rollercoaster because nothing came of her complaints.

26. When Ms. Flanders got no response from Mr. Watterson or management, she said "I'm done with this place" and left involuntarily. Ms. Flanders told Mr. Watterson, "I'm not going to put up with this."

27. Ms. Flanders' leaving was not voluntary as she needed the income; however, the inability of Human Resources or management to deal with her direct supervisor left her in extreme distress.

28. Ms. Flanders is on medication and will need counseling because her PTSD from past sexual assaults has been triggered by this domineering and controlling male's obnoxious behavior and comments.

29. Ms. Flanders timely filed a Charge of Discrimination which was docketed by the Commission for Human Rights as of October 23, 2018. See Exhibit 1, attached hereto and incorporated herein by reference.

30. On March 2, 2020, the New Hampshire Commission for Human Rights dismissed the Charge pursuant to RSA 354-A:21-a, I and II. See Exhibit 2, attached hereto and incorporated herein by reference.

31. On March 9, 2020, the EEOC closed its file because this lawsuit was to be filed. See Exhibit 3, attached hereto and incorporated herein by reference.

**COUNT I**
**Sexually Hostile Work Environment in Violation of**
**Title VII and N.H. RSA 354-A**

32. The foregoing allegations are re-alleged and incorporated herein.

33. Hostile environment harassment, in violation of 42 U.S.C. § 2000e-2 and RSA 354-A:7, consists of offensive gender-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and which is also subjectively perceived to be abusive by the victim. See Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996).

34. An employer becomes liable for its hostile work environment where there is actual knowledge by the employer, or high-echelon officials of an employer organization, of sufficiently sexually harassing action by subordinates, which the

employer or its informed officers do nothing to stop.  See <u>Faragher v. City of Boca Raton</u>, 524 U.S. 725, 789 (1998).

35. Mr. Watterson was the plaintiff's supervisor for purposes of imposing strict liability on the company because he had the authority to lead and direct Ms. Flanders' daily work activities.  <u>Noviello v. City of Boston</u>, 398 F.3d 76, 95-96 (1st Cir. 2005).  An employer is subject to "vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate … authority over the employee."  <u>Arrieta-Colon v. Wal-Mart Puerto Rico, Inc.</u>, 434 F.3d 75, 86 (1st Cir. 2006)(quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)).

36. The failure of Chartwell to take prompt remedial action after bringing Ms. Flanders' sexual harassment concerns to Human Resources' attention constitutes unlawful sex discrimination in violation of N.H. RSA 354-A and Title VII of the Federal Civil Rights Act of 1964.

37. As a direct and proximate result of the sex discrimination and retaliation perpetrated against Ms. Flanders by Chartwell Management, Ms. Flanders has suffered and continues to suffer damages including extreme emotional distress, humiliation, inconvenience, lost income, and loss of enjoyment of life and attorney's fees and costs.

## COUNT II
### Retaliation in Violation of Title VII and N.H. RSA 354-A

38. The foregoing allegations are re-alleged and incorporated herein.

39. To engage Title VII and RSA 354-A anti-retaliation provisions, a plaintiff must show that she (i) undertook protected conduct, (ii) suffered an adverse

employment action, and (iii) the two were causally liked.  See Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005).

40. A hostile work environment which is "known by and tolerated by the employer" is cognizable as a retaliatory "adverse employment action" for the purpose of satisfying the second element of the *prima facie* test for retaliating under Title VII and RSA 354-A:19.  See Id.

41. Chartwell officials were aware of Mr. Watterson's retaliatory harassment and they did nothing to stop it, and within days of Ms. Flanders' reporting activity took adverse action against Ms. Flanders by blocking computer access needed to do her job, further demonstrating the causal relationship between Ms. Flanders' reporting activity and the adverse actions she suffered which forced her to leave her employment and endure additional emotional distress and financial loss.

## COUNT III
### Constructive Discharge from Employment

42. The foregoing allegations are realleged and incorporated herein.

43. Constructive discharge is a method for satisfying the termination element of a wrongful termination claim.  Karch v. Baybank FSB, 147 N.H. 525, 536 (2002).

44. Accordingly, a plaintiff who has been constructively discharged must show (1) that her termination, or constructive discharge from, employment was motivated by bad faith, retaliation or malice, and (2) that such termination or constructive discharge was due to the employee's performance of an act that public policy would encourage or was due to the employee's refusal to do something that

public policy would condemn.  Id.  Such public policy may be based on a statutory or non-statutory policy.  Id. at 537.

45. Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign.  Id. at 536.

46. Ms. Flanders is entitled to pursue protection from sexual harassment which is illegal under the law and therefore public policy would condone her complaining about the treatment she was receiving at work from Mr. Watterson.  The bad faith of Chartwell in not promptly remedying the situation created intolerable work conditions for Ms. Flanders, especially given her prior sexual assault history that made her more prone to mental upset and fear at the hands of a male predator.

47. The above paragraphs being herein realleged reflect bad faith or retaliatory conduct on the part of Chartwell for which Ms. Flanders seeks compensation including back pay, front pay, compensatory damages for emotional distress and all other damages allowed by law.

WHEREFORE, Stephanie Flanders respectfully requests that this Honorable Court:

A. Schedule this matter for trial by jury, and, after trial:

B. Award the plaintiff damages for lost back wages;

C. Award the plaintiff damages for all other economic losses caused by the defendant's violations of law;

D. Award punitive damages;

E. Award damages for the plaintiff's emotional distress, pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

F. Award enhanced compensatory damages;

G. Award attorney's fees;

H. Award interest;

I. Award the plaintiff damages for all other damages to which she is entitled under applicable law; and

J. Grant such other and further relief as is just and equitable.

                        Respectfully submitted,
                        STEPHANIE FLANDERS
                        By her attorneys,
                        DOUGLAS, LEONARD & GARVEY, P.C.

Date: June 26, 2020        By:   /s/ Charles G. Douglas, III
                                              Charles G. Douglas, III, NH Bar #669
                                              14 South Street, Suite 5
                                              Concord, NH 03301
                                              (603) 224-1988
                                              chuck@nhlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served through ECF this 26th day of June 2020, to Stephen A. Duggan, Esq. at sduggan@hanover.com.

                                              /s/ Charles G. Douglas, III
                                              Charles G. Douglas, III